IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLOUDING IP, LLC,<br><br>V.<br><br>GOOGLE INC. | C.A. No. 12-639-LPS<br><br>**JURY TRIAL DEMANDED**<br><br>REDACTED -<br>PUBLIC VERSION |
| CLOUDING IP, LLC,<br><br>V.<br><br>MOTOROLA MOBILITY LLC | C.A. No. 12-1078-LPS<br><br>**JURY TRIAL DEMANDED** |

**BRIEF OF DEFENDANTS GOOGLE INC. AND MOTOROLA MOBILITY LLC IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF STANDING, INCLUDING ON THE BASIS THAT THE PURPORTED ASSIGNMENT OF PATENT RIGHTS TO CLOUDING IP, LLC IS VOID AS CHAMPERTOUS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (# 5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

OF COUNSEL:

*Attorneys for Defendants*

Michael A. Berta
ARNOLD & PORTER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024
(415) 471-3100

Jennifer Sklenar
Marco J. Martemucci
ARNOLD & PORTER LLP
44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844
(213) 243-4000

Original Filing Date: September 30, 2013
Redacted Filing Date: October 7, 2013

## TABLE OF CONTENTS

**Page**

I.    STATEMENT OF RELEVANT FACTS ........................................................................... 1

II.   ARGUMENT ............................................................................................................. 1

     A.    CHAMPERTOUS PATENT ASSIGNMENTS ARE VOID AND
            RESULTING SUITS SHOULD BE DISMISSED ................................................. 2

     B.    ████████████████████████████████████████
          ██████████████████████ ................................................................ 5

III.   CONCLUSION ......................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Optical Co. v. Curtiss,*
   56 F.R.D. 26 (S.D.N.Y. 1971) ..................................................................................4, 9

*Clarke v. Cambria Cnty. Bd. of Assessment Appeals,*
   747 A.2d 1242 (Pa. Commw. Ct. 2000) ...................................................................3, 9

*Gibson v. Gillespie,*
   34 Del. 331, 152 A. 589 (Super. Ct. 1928) ...........................................................2, 3, 4

*Hall v. State,*
   655 A.2d 827 (Del. Super. 1994) .....................................................................................4

*Hannigan v. Italo Petroleum Corp. of America,*
   Del.Super., 178 A. 589 (1935) ........................................................................................3

*In re Primus,*
   436 U.S. 412 (1978) .........................................................................................................2

*Jamison Coal & Coke Co, v. Goltra,*
   143 F.2d 889 (8th Cit. 1944) ..........................................................................................3

*Kenrich Corp. v. Miller,*
   377 F.2d 312 (3d Cir. 1967)............................................................................................3

*Koro Co., Inc. v. Bristol-Myers Co.,*
   568 F. Supp. 280 (D.D.C. 1983) ..................................................................................4, 9

*Osprey, Inc. v. Cabana Ltd. P'ship,*
   532 S.E.2d 269 (S.C. 2000) ............................................................................................2

*Refac Int'l, Ltd. v. Hitachi, Ltd.,*
   921 F.2d 1247 (Fed. Cir. 1990)............................................................................4, 5, 7, 8

*Refac Int'l, Ltd. v. Lotus Dev. Corp.,*
   131 F.R.D. 56 (S.D.N.Y. 1990) ............................................................................. *passim*

*Street Search Partners, L.P. v. Ricon Int'l, L.L.C.,*
   CIV.A.04C-09-191-PLA, 2006 WL 1313859 (Del. Super. May 12, 2006) .........................2, 4

*Trust For the Certificate Holders of Merrill Lynch Mortgage Investors, Inc. v. Love
   Funding Corp.,*
   13 N.Y.3d 190, 918 N.E.2d 889 (N.Y. 2009) ................................................................2, 3

Google Inc. ("Google") and Motorola Mobility LLC ("Motorola"), Defendants in these actions, submit this brief in support of their motion to dismiss for lack of standing, including on the basis that the purported assignment of patent rights to Clouding IP, LLC ("Clouding") is void as champertous and to join and further support the Opening Brief of Defendants Amazon.com, Inc. and Amazon Web Services, LLC in Support of Their Motion to Dismiss for Lack of Standing ("Amazon's Opening Brief") filed as D.I. 113 in *Clouding v. Amazon.com, Inc. and Amazon Web Services, LLC*, C.A. No. 12-641 (LPS).

Google and Motorola file this separate brief to address an additional reason why Clouding lacks standing and that its claims should be dismissed, namely, that the agreements by which Clouding allegedly obtained rights to the patents-in-suit are void as champertous.

## I.     STATEMENT OF RELEVANT FACTS

The facts relevant to this motion are also set forth in detail in Amazon's Opening Brief. As set forth therein, Clouding's purported rights to the patents-in-suit arise from agreements between Symantec Corp. and/or Symantec International (collectively, "Symantec") and Clouding.  (Amazon's Opening Brief at 2.)  Those agreements are titled "Patent Purchase Agreement" and "Patent Assignment Agreement" and are identified collectively as the "Agreement" in Amazon's Opening Brief.  (*Id.* at 2-3, citing Ex. A thereto).  For the purpose of this motion, the same terminology will apply.

## II.    ARGUMENT

Google and Motorola agree with Amazon that this case should be dismissed for lack of subject matter jurisdiction.  Clouding lacks standing to bring this suit because Clouding did not receive a transfer of all substantial rights in the patents-in-suit from Symantec.

However, there is an additional related basis upon which Clouding lacks standing requiring dismissal of this lawsuit. ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████



But, a transfer of a limited set of rights <span>REDACTED</span> is the functional equivalent of assigning a cause of action in exchange for a stake in the outcome, otherwise known as champerty. And, champerty is prohibited in a number of jurisdictions, including Delaware. Because the agreements are void, Clouding is entitled to no rights in the underlying patents at all and, for this reason -- in addition to those presented in Amazon's Opening Brief – Clouding lacks standing to pursue claims on the patents-in-suit and its claims should be dismissed.

A.  **CHAMPERTOUS PATENT ASSIGNMENTS ARE VOID AND RESULTING SUITS SHOULD BE DISMISSED**

Champerty is the maintenance of another person's lawsuit for potential financial gain. The relationship between champerty and the related common law doctrines has been described as follows: "maintenance is helping another prosecute a suit; champerty is maintaining a suit in return for a financial interest in the outcome; and barratry is a continuing practice of maintenance or champerty." *Osprey, Inc. v. Cabana Ltd. P'ship*, 532 S.E.2d 269, 273 (S.C. 2000) (*quoting In re Primus*, 436 U.S. 412, 424 n.15 (1978)). Champerty can arise, for example, as "an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it, dividing the proceeds with the owner, if they prevail; the champertor to carry on the suit at his own expense." *Street Search Partners, L.P. v. Ricon Int'l, L.L.C.*, CIV.A.04C-09-191-PLA, 2006 WL 1313859, *3 (Del. Super. May 12, 2006) (quoting *Gibson v. Gillespie*, 34 Del. 331, 152 A. 589, 593 (Super. Ct. 1928)).

"The doctrine of champerty developed to prevent or curtail the commercialization of or trading in litigation." *Trust For Certificate Holders of Merrill Lynch Mtge Invs., Mtge Pass-*

2

*Through Certificates, Series 1999-C1   v. Love Funding Corp.*, 13 N.Y.3d 190, 198-99, 918 N.E.2d 889, 893 (N.Y. 2009) (internal quotation omitted).   In modern terms, states which enforce champerty prohibitions do so to prevent the "strife, discord and harassment" that would be likely to ensue "from permitting attorneys and corporations to purchase claims for the purpose of bringing actions thereon." *Id.*

A federal court will not enforce a contract which is against the public policy of the state in which it sits.   *Jamison Coal & Coke Co, v. Goltra*, 143 F.2d 889, 895 (8th Cit. 1944) (affirming refusal by Missouri-located federal district court to enforce champertous contact made in Pennsylvania because of Missouri's public policy against champerty).   This is the law in the Third Circuit as well:

> As the district court recognized, *these facts raise a serious question of champerty which must be decided in accordance with the law of Pennsylvania, since Pennsylvania is the forum of this diversity action.* Under the common law of Pennsylvania, an arrangement offends public policy against champerty and is illegal if it provides for the institution of litigation by and at the expense of a person who, but for that agreement, has no interest in it, with the understanding that his reward is to be a share of whatever proceeds the litigation may yield. [citations omitted] A plaintiff who sues on what would be another's claim except for such a champertous agreement will not be permitted to maintain an action.

*Kenrich Corp. v. Miller*, 377 F.2d 312, 314 (3d Cir. 1967) (citations omitted, emphasis added).

"The activity of champerty has long been considered repugnant to public policy against profiteering and speculating in litigation and grounds for denying the aid of the court." *Clarke v. Cambria Cnty. Bd. of Assessment Appeals*, 747 A.2d 1242, 1245-46 (Pa. Commw. Ct. 2000). Delaware has a public policy against lawsuits brought on the basis of champertous agreements.

> It is the duty of the court to dismiss a case in which the evidence discloses that the assignment of the cause of action sued upon was tainted with champerty. [citing *Gibson*, 152 A. at 593]. *See also Hannigan v. Italo Petroleum Corp. of America,* Del.Super., 178 A. 589, 591 (1935) ("our courts have held that agreements of

3

> [champertous] character are necessarily absolutely void"). Although *Hannigan* and *Gibson* were decided at a time when champerty was still a criminal offense in Delaware, *see Hannigan,* 178 A. at 591 and *Gibson,* 152 A. at 593, ***the doctrine continues to have vitality in this State.***

*Hall v. State*, 655 A.2d 827, 830 (Del. Super. 1994) (emphasis added); *see also Street Search Partners*, 2006 WL 1313859, *3 (rejecting as champertous under Delaware law an assignment to pursue a claim by which the assignee would share the recovery with the assignor, but had no interest in the cause of action independent of the assignment agreement). Federal common law is no different. *See Koro Co., Inc. v. Bristol-Myers Co.*, 568 F. Supp. 280, 287 (D.D.C. 1983) (noting that champerty is prohibited under federal common law).

Champerty prohibitions apply to patent assignments as forcefully as they apply to other types of agreements. *See, e.g., American Optical Co. v. Curtiss*, 56 F.R.D. 26, 31 (S.D.N.Y. 1971) (noting that public policy in New York does not "countenance assignments to a corporation which are expressly contrived so as to enable the corporation to sue on the basis of the assigned rights."); *Refac Int'l, Ltd. v. Lotus Dev. Corp.*, 131 F.R.D. 56, 58 (S.D.N.Y. 1990) (dismissing patent case on the basis of finding the patent assignment agreement champertous); *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1250, n.1 (Fed. Cir. 1990) (acknowledging holding). In *American Optical*, the court explicitly noted that, although patent assignments are of course legal, limited assignments contrived to enable the assignee to bring suit on such patents are prohibited:

> It is true that the Agreement would not have been illegal under New York law if the University owned a patent and had made an absolute assignment of it to [Plaintiff], without conditioning the assignment upon the commencement of a suit by [Plaintiff]. Here, however, the assignment Agreement between the University and [Plaintiff] provided for and required [Plaintiff] to bring a law suit. Indeed, the Agreement appears to have been a contrivance solicited by [Plaintiff] to enable it to bring suit on behalf of the University, and the proposed suit was the very purpose and substance of the Agreement. [Plaintiff's] intent to sue was not merely incidental and contingent. It is clear that [Plaintiff] took the assignment 'with the

intent and for the purpose of bringing an action or proceeding thereon . . .'

*American Optical*, 56 F.R.D. at 30-31. (internal citations omitted).

The Federal Circuit has looked with disfavor on at least one instance of a patent infringement plaintiff's privateering business model, prefacing its decision affirming the dismissal of the infringement claims and remanding the case for consideration of sanctions against the plaintiff as follows:

> As stated in its 1987 Annual Report, Refac's primary business is licensing and technology transfer, with a staff of patent law experts "prepared to litigate without financial risk to its clients." According to Refac's then president, Phillip Sperber, "It only makes sense to use the cost of litigation as a bargaining leverage to force a settlement on terms favorable to the party that can litigate the matter to death without worrying about the cash flow."

*Refac Int'l., Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1250 (Fed. Cir. 1990) (citations omitted). In another case brought by the *Refac* plaintiffs, the Southern District of New York found that the plaintiff had obtained only a limited interest in the patent "simply for the purpose of pursing litigation on [the patentee's] behalf," and on that basis concluded that the assignment agreement was "nothing but a hunting license – which is to say, it is champertous and therefore void." *Refac Int'l, Ltd. v. Lotus Dev. Corp.*, 131 F.R.D. at 58.

**B.** ███████████████████████████████████ **AGAINST PUBLIC POLICY AND THEREFORE VOID**

The relationship between Clouding and the Symantec patents now in suit is defined by the Agreement. ████████ REDACTED ████████ ██████████████

██████████████████████████████ REDACTED ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

**REDACTED**

The benefits to both parties (and the cost to the public) are clear. Clouding, unlike Symantec, is able to pursue litigation without significant risk of countersuit, because it is a patent assertion entity that does not practice any of the patents-in-suit and has no other known assets, business relationships, or commercial presence in the market. Unlike Symantec, Clouding is free to speculate on the outcome of the instant lawsuits without risk to its reputation or market relationships -- principally because it has none. This lack of constraint incentivizes Clouding to file as many lawsuits as possible against as many Symantec competitors as possible, regardless of merit. By filing infringement suits against a large number of defendants on a large number of patents and claims, Clouding ensures that the litigation costs alone will be a significant factor that will lead all but the best funded defendants to seriously consider settlement, regardless of the merits of Clouding's claims.

**REDACTED**

REDACTED

REDACTED

*Refac Int'l., Ltd. v. Hitachi, Ltd.*, "to use the cost of litigation as a bargaining leverage to force a settlement on terms favorable to the party that can litigate the matter to death without worrying about the cash flow." 921 F.2d at 1250.

REDACTED

7

REDACTED

REDACTED

████████████████████████████ REDACTED ████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████ This is champerty.

"The activity of Champerty has long been considered repugnant to public policy against profiteering and speculating in litigation and grounds for denying the aid of the court." *Clark*, 747 A.2d at 1245. ████████████████████████████████████

██████████████████████████████████████ As in *Refac*,

*American Optical*, and *Koro*, ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ Thus, Clouding lacks standing to maintain these suits for the additional reason that the Agreement is void as champertous and should not be enforced by this Court.

## III.   CONCLUSION

For the foregoing reasons and the reasons set forth in Amazon's Opening Brief, Clouding's complaints should be dismissed.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Paul Saindon (# 5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

OF COUNSEL:

Michael A. Berta
ARNOLD & PORTER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024
(415) 471-3100

*Attorneys for Defendants*

Jennifer Sklenar
Marco J. Martemucci
ARNOLD & PORTER LLP
44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844
(213) 243-4000

September 30, 2013

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 7, 2013, upon the following in the manner indicated:

Richard D. Kirk, Esquire                                          *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

Marc. A. Fenster, Esquire                                       *VIA ELECTRONIC MAIL*
Jaspal S. Hare, Esquire
Dorian S. Berger, Esquire
Brian Ledahl, Esquire
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)