**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CLOUDING IP, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 12-675-LPS |
| RACKSPACE HOSTING, INC., RACKSPACE US, INC., AND JUNGLE DISK, LLC, | |
| Defendants. | |
| CLOUDING IP, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 12-639-LPS |
| GOOGLE, INC., | |
| Defendant. | |
| CLOUDING IP, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 12-1078-LPS |
| MOTOROLA MOBILITY, LLC, | |
| Defendant. | |
| CLOUDING IP, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 12-641-LPS |
| AMAZON.COM INC., AND AMAZON WEB SERVICES, LLC | |
| Defendants. | |

**PLAINTIFF CLOUDING IP, LLC'S ANSWERING BRIEF IN OPPOSITION TO DEFENANTS' MOTION TO BIFURCATE DAMAGES FROM LIABILITY AND TO STAY DAMAGES-RELATED FACT AND EXPERT DISCOVERY**

October 21, 2013

OF COUNSEL:

Marc A. Fenster
Brian D. Ledahl
Dorian S. Berger
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
mfenster@raklaw.com
bledahl@raklaw.com
dberger@raklaw.com

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@ bayardlaw.com

*Attorneys for Plaintiff Clouding IP, LLC*

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 3

III. ARGUMENT ....................................................................................................... 6

    A.   Bifurcation Is An Extraordinary Measure That Would Create
        Complexity And Inflict Considerable Prejudice On Clouding ................... 6

        1.   Bifurcation can create unnecessary complexity .............................. 6

        2.   Bifurcation would prejudice Clouding and lead to
            unnecessary delay .......................................................................... 7

    B.   The Court Has Already Addressed Defendants' Concerns Through
        Its Case Management Orders ................................................................... 9

    C.   Substantial Factual Overlap Between Damages And Liability
        Makes Bifurcation Unwarranted ............................................................. 10

        1.   Reasonable royalty analysis overlaps with liability facts ............ 10

        2.   Damages analysis overlaps with commercial success
            liability facts ................................................................................ 11

        3.   Willfulness facts overlap with liability facts ................................ 13

    D.   Staying Damages-Related Discovery is Unworkable, Inefficient
        and Further Prejudices Clouding ............................................................. 13

    E.   Defendants' Claims of Prejudice Are Unsubstantiated and
        Speculative .............................................................................................. 15

    F.   Defendants Do Not Explain Why Bifurcation Must Be Considered
        At This Time ........................................................................................... 16

    G.   Defendants Additional Arguments Fail To Support The Requested
        Bifurcation ............................................................................................. 18

IV.  CONCLUSION .................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**

*British Telecom PLC v. Google Inc.*
  order.  (No. 11-1249-LPS, 2013 WL 3814329 (D. Del. July 22, 2013)) ............................................... 18

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,*
  498 F. Supp.2d 734 (D. Del. 2007) ............................................................................................... 6

*Gasoline Prods. Co. v. Champlin Refining Co.,*
  283 U.S. 494 (1931) .................................................................................................................. 7, 8

*Georgia-Pacific Corp. v. United States Plywood Corp.,*
  318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.) ................ 10, 11, 12, 16

*Hughes Tool Co. v. Dresser Industries Inc.,*
  816 F.2d 1549 (Fed. Cir. 1987), cert. denied, 484 U.S. 914 (1987) ..................................... 12

*Johns Hopkins Univ. v. CellPro,*
  160 F.R.D. 30, 32 (D. Del. 1995)........................................................................................ 6, 7, 14

*Joy Techs., Inc. v. Flakt, Inc.,*
  772 F. Supp. 842 (D. Del. 1991) ........................................................................................... 7

*Lis v. Robert Packer Hosp.,*
  579 F.2d 819 (3d Cir. 1978)................................................................................................... 6

*Masimo Corp. v. Philips Elecs. N. Am. Corp.,*
  742 F. Supp. 2d 492, 497 (D. Del. 2010) ............................................................................ 11

*Paine, Webber, Jackson & Curtis, Inc., v. Merrill Lynch, Inc.,*
  587 F. Supp. 1112 (D. Del. 1984) ...................................................................................... 18

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
  No. 04-cv-1371, 2006 WL 2435089 (D. Del. August 22, 2006) ......................................... 19

*Robert Bosch, LLC v. Pylon Mfg. Corp.,*
  719 F.3d 1305 (Fed. Cir. 2013).............................................................................................. 8

*Senorx, Inc., v. Hologic, Inc.,*
  No. 12-173-LPS-CJB at 4 (D. Del. Jan. 30, 2013)............................................... 6, 13, 14, 18

*Sepracor, Inc. v. Dey LP,*
  No. 06-113, 2010 WL 2802611, at *3 (D. Del. July 15, 2010)............................................. 6

*Smith v. Alyeska Pipeline Service Co.*,
  538 F. Supp. 977 (D. Del. 1982) ............................................................................................ 9

*Synopsys, Inc. v. Magma Design Automation*,
  No. 05-701, 2006 WL 1452803, at *4 (D. *Del.* May 25, 2006) ............................................ 15

*Webxchange Inc. v. Dell Inc.*,
  No. 08-132, 2009 WL 5173485, at *4 (D. Del. Dec. 30, 2009) ............................................ 6

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
  707 F. Supp. 1429 (D. Del. 1989) ........................................................................................ 14

*Witco Chemical Corp. v.* Peachtree *Doors, Inc.*,
  787 F.2d 1545 (Fed. Cir. 1986) ......................................................................................... 7, 8

*XpertUniverse, Inc. v. Cisco Sys.*,
  No. 09-157-RGA (D. Del. March 7, 2013) .......................................................................... 12

## Statutes and Rules

35 U.S.C. § 284 ........................................................................................................................ 10, 16

Fed. R. Civ. Pro. 26(b)(1) ............................................................................................................ 14

## Constitutional Provisions

U.S. Const., Am. VII ..................................................................................................................... 7

## I.    INTRODUCTION

Defendants, in their Motion, ask this Court to bifurcate trial of liability issues and damages issues, and stay all discovery on damages issues until after a trial on liability is concluded.  They suggest that such bifurcation is needed because the complexity of trying both issues together will be too much for a jury to handle.  This is simply not the case.  Bifurcation is not, as Defendants try to suggest, a foregone conclusion in this or any court.  It is not the automatic procedural response to any alleged complex case, else bifurcation would be the norm, not the exception.  It is particularly the wrong conclusion here because bifurcation that would result in trial of issues to separate juries in this case would create significant inefficiency, severely prejudice the plaintiff, and also implicate Clouding's constitutional rights.  These significant problems demonstrate that bifurcation often causes more problems than it aims to solve and warrant denial of Defendants' motion.

The issues of liability and damages in these cases are heavily intertwined.  Trying them separately would be inefficient and prejudicial.  For example, in responding to Defendants' claims that the asserted claims of the patents-in-suit are obvious, Clouding will, among other facts, rely upon the commercial success of Defendants' products as an objective indicia of the non-obviousness of the claimed invention.  That commercial success will be proved through evidence of Defendants' sales and profits from their products, the very same evidence that will be at the heart of a damages case.  Similarly, trial of damages issues in these cases will necessarily entail facts regarding the nature and extent of the Defendants' infringement, scope of their use of the accused products and the importance of the patented inventions to their infringing products.  The same issues will be presented during trial regarding liability issues.  Presenting all of these facts repeatedly to two separate juries will unduly burden the Court and is inefficient and counterproductive.

This close interrelationship of facts between issues of liability and damages also makes bifurcation Constitutionally problematic.  The Supreme Court has ruled that trying such interwoven issues to separate juries violates a party's Seventh Amendment rights.  Here, the facts involving liability and damages are so inextricably intertwined that separate trials would create an unconstitutional result, forbidden by the Seventh Amendment.

Although Defendants' contend that complexity requires bifurcation, the opposite is true.  In fact, this Court has already implemented significant measures to simplify any arguable complexity.   The Scheduling Order requires Clouding IP, LLC ("Clouding") to limits its asserted claims to no more than 20 per case 60 days after a *Markman* order. In addition, the Court has postponed *Markman* proceedings in this case to allow for consolidation with other, more recently-filed cases, giving the parties substantial additional time to conduct fact discovery related to both liability and damages.

Defendants' motion fails to demonstrate that bifurcation is needed at all, and it particularly fails to demonstrate that it is needed now.  The Court has many available tools other than bifurcation to further simplify these cases for trial.  Defendants, for example, have served common Paragraph 4(d) Invalidity Contentions that include over 120 references.  The Court could order Defendants to limit their prior art references similar to the Court's Scheduling Order that requires Clouding to limit its asserted claims. Moreover, discovery and other events in the case will necessarily help focus the issues as the case moves forward.  Clouding will be obliged to further narrow its claims.  The *Markman* process, as well as meaningful discovery from Defendants, will likely help Clouding to narrow the scope of products at issue for trial, or determine that certain products are representative of others.  The Court need not decide the issue of bifurcation of trial now, given that the ultimate shape and complexity of the case to be presented at trial remains uncertain at the present. The delay in *Markman* proceedings provides adequate time for discovery on both damages and liability to proceed.

2

The Court should therefore continue down the path on which it has embarked and employ case management devices other than the drastic measure of bifurcation. The resulting inefficiency and prejudice, including denial of the right to jury trial, resulting from bifurcation of these cases warrant denial of Defendants' Motion.

## II.    FACTUAL BACKGROUND

Clouding filed original complaints against Defendants Google, Inc. ("Google"), Rackspace Hosting Inc. et al (together "Rackspace") and Amazon.com, Inc. with Amazon Web Services, LLC (together "Amazon") in May 2012. Clouding filed its complaint, which asserts only two patents, against Motorola Mobility LLC ("Motorola"), on August 27, 2012. Clouding has amended its complaints against Amazon, Google and Rackspace and now asserts willful infringement claims against those parties. Clouding alleges induced infringement of one or more patents against all Defendants. The parties jointly proposed a Scheduling Order in all four cases on January 7, 2013 (12-641 D.I. 27). The Court signed and entered the parties' proposed Scheduling Order for all cases on January 10, 2013 (12-641 D.I. 28). Clouding served its Paragraph 4(c) Disclosures on each Defendant by March 11, 2013. Defendants' core technical document productions pursuant to Paragraph 4(b) were due April 15, 2013. Despite the advanced stage of the proceedings, Amazon and Google have yet to produce any source code for any Accused Instrumentality. (*See* 12-641 D.I. 98).[1]

To address essentially the same concerns Defendants raise in this Motion, the Court ordered Clouding to reduce the number of its asserted claims to no more than 40 per defendant by September 13, 2013, which Clouding did. (12-641 D.I. 28 at ¶ 2). Clouding is now asserting 37 claims against Google, 40 claims against Amazon, 35 claims against Rackspace and 7 claims against Motorola. The parties have stipulated to

---

[1] Clouding has repeatedly asked the Defendants to produce this code, and the Court has ordered it produced. Notwithstanding this, Defendants Google and Amazon have still not even begun their production of source code.

delay *Markman* proceedings in these cases to permit coordination with *Markman* proceedings in additional, more recently filed cases.  (*See* 12-641 D.I. 121.)  It now appears that the *Markman* hearing will be delayed by several months with certain defendants in later-filed cases requesting that the hearing be further delayed.  (*See* 12-641 D.I. 116)

Defendants have already propounded discovery on a variety of issues, including damages.  Among the discovery Clouding has provided Defendants is a response to Common Interrogatory 5, which seeks Clouding contentions regarding "secondary considerations or objective indicia probative of non-obviousness of the claims of any of the Patents-in-Suit."  (*See* Ledahl Decl. Ex. 1).  Clouding has provided Defendants with its contentions regarding all patents-in-suit and has given Defendants notice that it intends to rely on the "commercial success" and "unexpected results" of the inventions of each patent and intends to offer proof of the commercial success of Defendants' infringing products to support its contention.  (*Id.*)  For example, for the asserted '607 patent, Clouding has disclosed to Defendants:

> Clouding contends that the significant commercial success of the Accused Instrumentalities in this case, as well as the Accused Instrumentalities in the related cases brought by Clouding, demonstrate that the invention claimed in the '607 patent led to significant commercial success. Additional discovery relating to the revenue that Defendants have realized from the accused Instrumentalities is germane to establishing the significant commercial success of the invention disclosed in the '607 patent. Pending discovery is likely to show Defendants have received significant revenue attributed to sales of products that practice the invention disclosed in the '607 patent…

> The '607 patent has been licensed to numerous companies. See CLI_3877-3961, CLI_4033-4036, and CLI_17757-17774. The companies that have taken a license to the '607 patent include some of the largest companies in the world, including for example Microsoft, Apple, Oracle, and Symantec. In addition, the '607 patent has been cited at least 414 times by other patent applicants in the prosecution of their own patents. Many of these patent applicants have come from major industry entities. For example, the '607 patent has been cited by IBM, Hitachi, EMC, Microsoft, HP, Oracle, Novell and Micron Technologies in prosecuting

their own patents. The widespread licensing and numerous citations to the '607 patent are strong indicia of the advantages and commercial success of the teachings disclosed in the '607 patent. Clouding anticipates that it will take additional discovery relating to the value that Defendants place on patents and the technologies at issue. Further discovery relating to the value that Defendants place on licensing technology is directly relevant to secondary considerations of non-obviousness.

Defendants' sale and/or practicing of the accused instrumentalities has led to unexpected results and properties that directly relate to the secondary consideration of non-obviousness for the '607 patent. At the time the invention disclosed in the '607 was developed cloud computing was not a multibillion dollar business. Recently, cloud computing technologies have mushroomed, spawning a multibillion dollar industry. The widespread adoption of cloud computing technologies (taught in the '607 patent) are an unexpected property of the invention and were met with skepticism at the time. Clouding seeks additional discovery relating to revenue garnered from cloud computing as this is directly relevant to whether the teachings in the '607 patent were not expected to lead to what is currently a multibillion dollar industry.

Defendants have also sought damages-related discovery. For example, Common Interrogatory 8 seeks detailed damages-related discovery:

State the amount of damages to which Clouding claims to be entitled from each Defendant in this action, whether as lost profits, a reasonable royalty, or otherwise, and explain in detail the method used to calculate those damages, including for each Patent-in-suit all facts, contentions, circumstances, Documents, and Things that Clouding alleges support any royalty rate(s) that it contends to constitute a "reasonable royalty" under 35 U.S.C. § 284 for the alleged infringement of the Patents-in-suit, when Clouding contends that the damages period begins to run for each of the Patent-in-suit, and the basis of such contention.

In addition, Defendants have all sought damages-related documents, such as patent license agreements, from Clouding. Clouding has produced all of this requested information to the Defendants.

Going forward, the Scheduling Order requires Clouding to reduce the number of its asserted claims to 20 per Defendant 60 days after the *Markman* order. The Scheduling Order places no limits on the number of Defendants' prior art references, which the Court

5

can limit to further simplify issues for discovery and trial.  Defendants' Joint Paragraph 4(d) Disclosures include 124 invalidity references and Defendants have not removed any references since Clouding limited its asserted claims.  In fact, Defendants recently served discovery on Clouding seeking detailed contentions regarding each and every reference in their collective Paragraph 4(d) disclosures.  (*See* Ledahl Decl. Ex. 2, Common Interrogatory 9.)

## III.    ARGUMENT

### A.    Bifurcation Is An Extraordinary Measure That Would Create Complexity And Inflict Considerable Prejudice On Clouding

Defendants suggest in their moving papers that bifurcation into separate trials on liability and damages, with separate discovery periods on both, is the norm in patent cases.  This Court's prior decisions refute that suggestion.  In fact, this Court has held that "bifurcation remains the exception rather than the rule." *Sepracor, Inc. v. Dey LP*, No. 06-113, 2010 WL 2802611, at *3 (D. Del. July 15, 2010)( declining to bifurcate liability and damages in patent case); *see also Webxchange Inc. v. Dell Inc*., No. 08-132, 2009 WL 5173485, at *4 (D. Del. Dec. 30, 2009).  "In the normal course of litigation, all claims and issues in a civil action are presented for resolution in one trial." *Johns Hopkins Univ. v. CellPro*, 160 F.R.D. 30, 32 (D. Del. 1995)(patent case denying request for bifurcation) (*citing Lis v. Robert Packer Hosp*., 579 F.2d 819 (3d Cir. 1978)); *see also Senorx, Inc., v. Hologic, Inc*., No. 12-173-LPS-CJB at 4 (D. Del. Jan. 30, 2013)("…the default presumption in [patent] cases is that all claims and defenses will be heard in one trial.").

#### 1.    Bifurcation can create unnecessary complexity

Courts in this District recognize that bifurcation of liability and damages issues in a patent case can lead to unnecessary complexity and duplication of effort for both the parties and the Court.  For example, "dividing the ultimate resolution of a dispute into

separate trials could inevitably lead to additional discovery, more pretrial disputes, empaneling a second jury, deposing or recalling the same witnesses and the potential for multiple, additional post-trial motions and appeals." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 498 F. Supp.2d 734, 736 (D. Del. 2007) (internal quotations omitted). Thus, bifurcation should "prevail only in exceptional cases." *Id.*

### 2. Bifurcation would prejudice Clouding and lead to unnecessary delay

Bifurcation would also clearly prejudice Clouding. In recognition of this type of prejudice, courts in this District have refused bifurcation because of "the danger of two separate juries finding conflicting facts," as well as the increased cost, "inevitable delay, and resulting prejudice to plaintiff, of two separate trials. *Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991). As another decision in this District recognized, "[t]h[e] stop-and-start of a stay of discovery and separate trials undermines [the] goal of working to apply the Rules of Civil Procedure to obtain a just, speedy and inexpensive resolution of every action." *Johns Hopkins Univ. v. CellPro*, 160 F.R.D. 30, 36 (D. Del. 1995).

### 3. Bifurcation implicates significant Constitutional issues

The Seventh Amendment to the Constitution provides for a right to trial by jury, and that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rues of the common law." U.S. Const., Am. VII. The Supreme Court has noted that "the question of damages [ ] is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).

The Federal Circuit holds that in patent cases, the trial court must consider the totality of the circumstances in a case in order to determine whether bifurcation of issues for trial in a particular case is appropriate. *Witco Chem. Corp. v. Peachtree Doors, Inc.*,

787 F.2d 1545, 1549 (Fed. Cir. 1986).  Applying the Supreme Court's holding in *Gasoline Products*, the Federal Circuit ruled that separation of issues for trial "may not properly be resorted to unless it clearly appears that the issue to be []tried is so distinct and separable from the others that a new trial of it alone may be had without injustice." *Id.* (internal quotations omitted).  In *Witco*, the issue of separate trials arose in connection with a potential grant of a partial new trial on only certain issues, but the underlying principles are identical.  Ultimately, the *Witco* Court concluded that the issues under consideration were "interwoven with the factual underpinnings" of one another such that separate trials would violate the Seventh Amendment.

This issue was recently addressed by some of the judges of the Federal Circuit in connection with an *en banc* decision.  *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305 (Fed. Cir. 2013).  The primary issue in that appeal was the Court's appellate jurisdiction to hear an appeal of a finding of liability only from a case in which issues of liability were bifurcated from issues of damages and willfulness in the trial court.  The majority noted that it was not ruling on the propriety of bifurcation itself.  In dissent, Judges O'Malley and Wallach stated that "[t]he fact that these two proceedings would be before two separate juries raises serious constitutional questions." *Id.* at 1345.  Judges O'Malley and Wallach noted that "[t]he question of whether issues are sufficiently separable and distinct to permit trial to different juries is to be determined on a case by case basis considering the totality of circumstances." *Id.* at 1346, n.10.  "Where the circumstances confirm that the issues to be addressed in the separate trials are as interwoven as they are whenever willful infringement allegations are bifurcated, a separate trial of that claim alone would rarely, if ever, pass constitutional muster under such an analysis." *Id.*

Courts in this District also recognize the importance of this Seventh Amendment analysis to the bifurcation inquiry:

> "The central inquiry is whether the issues heard by the second jury ("the damage jury") will be so distinct and independent from those issues heard by the first jury ("the liability jury"). *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 75 L. Ed. 1188, 51 S. Ct. 513 (1931). Two juries cannot decide factual questions that are common to both trials and which are essential to a verdict or an award. Factual questions resolved by one jury which could be reexamined by another jury, either directly or indirectly, violates the Seventh Amendment. *Id*."

*Smith v. Alyeska Pipeline Service Co.*, 538 F. Supp. 977, 984 (D. Del. 1982). Given these Constitutional issues, the Court must evaluate whether the issues sought to be bifurcated involve common factual questions such that bifurcation would be not only inefficient, but also a Seventh Amendment violation.

### B.   The Court Has Already Addressed Defendants' Concerns Through Its Case Management Orders

Defendants primarily assert that the Court should bifurcate issues of liability and damages in these cases because the cases are purportedly too complex for issues of liability and damages to be tried together.  Clouding does not share Defendants' views that this Court and a Delaware jury would be incapable of considering the issues presented in this case.  Clouding respectfully submits that the Court has already addressed the same basic assertions raised by Defendants in its prior case management orders, and that additional future developments in the case (pursuant to the Court's case management orders) will further simplify the case if necessary.

For example, Clouding has already substantially focused this case by reducing the number of asserted claims consistent with the Court's prior orders.  After *Markman* proceedings, Clouding will need to further reduce the number of claims consistent with the Court's Orders.  Likewise, it is possible that following meaningful discovery from Defendants, and the Court's ruling on claim construction issues, Clouding will be in a position to further focus the scope of the case with potentially fewer accused products for trial.  Meaningful discovery may reveal, for example, that various products or services of a given defendant all operate in a similar manner or using a common base of software

code, such that one product may be representative of several currently-identified products for purposes of trial presentation.

The Court's case management orders already address these eventualities. To the extent that Defendants argue that the sheer number of invalidity references they are asserting (currently more than 120) will create complexity, that is obviously a problem within their own control. Moreover, the Court can enter further orders requiring each Defendant to limit the number of prior art references upon which it will rely, just as Clouding has limited the number of asserted claims.

### C. Substantial Factual Overlap Between Damages And Liability Makes Bifurcation Unwarranted

As noted above in Section A, where the factual issues to be resolved by the jury in connection with damages and liability are intertwined, bifurcation is both constitutionally suspect and inefficient. Such is the case here.

#### 1. Reasonable royalty analysis overlaps with liability facts

Clouding seeks a reasonable royalty measure of damages in these cases, consistent with 35 U.S.C. § 284. Such damages are assessed under the *Georgia-Pacific* factors. To evaluate many of these factors, the jury will have to decide factual issues that are inextricably intertwined with factual issues a jury would need to evaluate in a liability trial. These factors include:

> 9. "The utility and advantages of the patent property over any old modes or devices that had been used."
>
> 10. "The nature of the patented invention, its character in the commercial embodiment owned and produced by the licensor, and the benefits to those who used it."
>
> 11. "The extent to which the infringer used the invention and any evidence probative of the value of that use."
>
> 13. "The portion of the realizable profit that should be credited to the invention as distinguished from any nonpatented elements, manufacturing

> process, business risks or significant features or improvements added by the infringer."

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.); *Unisplay, S.A. v. American Electronic Sign Co., Inc.*, 69 F.3d 512, 517 n.7 (Fed. Cir. 1995).

Factors 9, 10, 11, and 13 clearly overlap with liability facts relating to infringement and validity.  For example, in the context of validity analysis, the jury will be asked to evaluate the differences between the claimed inventions and the prior art.  Factor 9 requires a very similar analysis of the differences between the patented invention and "old modes or devices that had been used."  Similarly, in evaluating factors 10, 11, and 13, a jury must consider the nature of the invention and how it is utilized in the infringing products.  The jury evaluating liability will obviously also evaluate the nature of the inventions and the use of the claimed inventions in the accused products.

 Courts in this District recognize the significant overlap and inefficiency that can result from bifurcation like that requested here:

> "[the] liability case will require educating the jury on specific damages issues, and . . . certain aspects of [the] damages case will require educating the jury on liability issues….[B]ifurcation would force the parties to, among other duplicative activities, educate a second jury about the patented technology to allow the jurors to determine lost profits, utilize identical information and witnesses to rebut obviousness in the liability phase as well as demonstrate that [the] inventions were significant advances over the prior art in the damages phase, and present identical sales information regarding [the parties'] products to rebut invalidity and demonstrate royalty damages or lost profit damages."

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 742 F. Supp. 2d 492, 497 (D. Del. 2010).

Similar factors here warrant denial of Defendants' motion.

### 2.    Damages analysis overlaps with commercial success liability facts

As discussed previously, Clouding has already indicated in discovery that it intends to rely upon the commercial success of Defendants' accused products as one of

many objective indicia of non-obviousness of the asserted patent claims.  The facts that

Clouding will introduce at trial to demonstrate commercial success will include, for

example, the level of sales and revenue derived from the defendants' use and/or sale of

accused products.  *See, e.g. Hughes Tool Co. v. Dresser Indus. Inc*., 816 F.2d 1549 (Fed.

Cir. 1987).  For damages, Clouding will prove a reasonable royalty measure and will rely

on the level of sales and revenue derived from defendants' use of accused products to

build its royalty base.  *Id*. at 1556.  Clouding also indicated that it will rely upon licensing

agreements to further demonstrate the commercial success of the patents-in-suit.  These

facts will overlap with the jury's analysis of additional *Georgia-Pacific* factors.  For

example, factor 1, "royalties received by the patentee for licensing the patent" will

directly overlap with the facts to be presented as part of the commercial success inquiry

in demonstrating the non-obviousness of the patents-in-suit.  *Georgia-Pacific* Factor 8,

"the established profitability of the patented product, its commercial success and its

current popularity" will also overlap extensively with the commercial success analysis

regarding the patents' validity.  Defendants' requested bifurcation would result in two

separate juries being required to decide these same issues of fact.  It would also result in

the need for the same experts to testify to the same issues in both trials.  Recent cases

have recognized that damages experts should opine on commercial success.  *See*

*XpertUniverse, Inc. v. Cisco Sys*., No. 09-157-RGA, p. 6 (D. Del. March 7, 2013). (The

plaintiff's technical expert's "opinion that [defendant's] market performance is

attributable to [plaintiff's] technology, found in his ultimate conclusions on commercial

success and industry acceptance, exceeds his technical expertise and is not

permissible…[plaintiff] does not argue that that [the technical expert] has expertise in

marketing or business.").  Thus, the overlap between issues would make bifurcation both

inefficient, and constitutionally problematic.

      **3.**      **Willfulness facts overlap with liability facts**

      Defendants' motion is not clear as to which phase of the requested bifurcated

proceedings they argue should involve willfulness.  Presumably, this is because

willfulness issues necessarily overlap with both liability and damages.  While willfulness

is clearly related to damages issues and the possible enhancement of damages, courts in

this District also recognize that there is "significant . . . evidentiary overlap regarding

liability and willfulness issues."  *Senorx, Inc., v. Hologic, Inc.*, No. 12-173-LPS-CJB at 7

(D. Del. Jan. 30, 2013).  Specifically, the intent requirements to establish willfulness

overlap with the intent elements necessary to prove indirect infringement.  *Id.*  Thus,

regardless of whether Defendants contend that willfulness should be tried with liability or

damages, its overlap between both issues and further indicates why bifurcation is

inappropriate.

      **D.**  <u>**Staying Damages-Related Discovery is Unworkable, Inefficient and**</u>
            <u>**Further Prejudices Clouding**</u>

      In addition to requesting bifurcation of trial, Defendants also ask the Court to stay

all damages-related discovery.  This request is wasteful and unnecessary and would be

highly prejudicial to Plaintiff.  As discussed previously, the parties have already agreed to

delay the *Markman* hearing in this matter, expanding the time available for discovery.

Defendants provide no reasoning or examples to substantiate any claim that proceeding

with damages discovery would be somehow unduly burdensome.  Defendants have

already sought and received damages-related discovery from Clouding.  Clouding needs

to receive similar damages-related discovery from Defendants to prepare its case and to

respond to the damages contention discovery propounded by Defendants.

      The substantial factual overlap between damages and liability issues also creates

substantial problems with staying damages discovery.  First, artificially splitting the

issues invites substantial disagreements and motion practice between the parties.  As explained above, issues such as commercial success will have substantial, if not complete, overlap with damages issues.  The witnesses, company knowledge and documents are likely to be the same for both legal issues.  The parties' respective legal teams will surely quarrel about the propriety of certain discovery.  *See Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1435 (D. Del. 1989)("[I]t appears inevitable that, if the motion to bifurcate were granted, both the discovery process and liability trial would be repeatedly delayed by disputes regarding the discoverability or admissibility of evidence."); *see also Senorx*, No. 12-173 at 7-8 ("More concrete is the reality that the parties … have already been engaged in disagreements over whether certain discovery should fall into a "liability" or "damages/willfulness" category- an inefficiency that would be avoided if the cases were not bifurcated.")

Second, staying damages-related discovery would interfere with Clouding's case preparation.  If Defendants withhold discovery from Clouding that may bear on liability issues, such as commercial success, Clouding would be impaired in its ability to prepare for trial on liability issues.  Bifurcating discovery goes against the Federal Rule's prescription that discovery be broad and that all discovery that is "reasonably calculated to lead to the discovery of admissible evidence" be turned over.  *See* Fed. R. Civ. Pro. 26(b)(1), s*ee also, Johns Hopkins*, 160 F.R.D. at 36 ("Th[e] stop-and-start of a stay of discovery and separate trials undermines [the] goal of working to apply the Rules of Civil Procedure to obtain a just, speedy and inexpensive resolution of every action.").  To the extent that such discovery is not withheld, then it is unclear what possible benefit the requested stay of discovery would achieve.

Finally, staying damages-related discovery will harm the parties' ability to perform reasonable case assessment.  If the parties are allowed to now pursue damages-related discovery, Clouding, for example, could assess the extent of use of accused

products and may tailor its asserted claims accordingly.  Meaningful damages discovery also permits the parties to reasonably assess the case, increasing the potential for resolution.

Damages discovery is already underway. No good reason exists to now bring it to a halt.  Defendants have not substantiated their conclusory assertion that damages-only discovery, to the extent any exists in these cases, would be "extensive and onerous."  On the contrary, creating an artificial distinction between discovery that may be damages-related and not liability-related invites duplicative discovery, witnesses being deposed twice, wasteful disagreements and motion practice, and does not further the goal of just and speedy resolution of Clouding's claims.

### E.   <u>Defendants' Claims of Prejudice Are Unsubstantiated and Speculative</u>

Defendants make the conclusory assertion that they "will suffer immense prejudice if the jury is so overwhelmed by complex and voluminous infringement and invalidity permutations that its damages findings are tainted by confusion."  Defs.' Brief at 8.  Defendants provide nothing to substantiate their claim of prejudice either from a single trial of liability and damages, or from proceeding with damages discovery.

Defendants contend that the jury may be overwhelmed by having to decide liability and damages issues on many products and patents.  This is not the case.  First, as discussed previously, Defendants' contentions about the number of products and patent claims at issue are speculative at this point, since the number of claims is certain to change further before trial, and the number of products at issue may also change before trial.  Second, Defendants fail to offer evidence to support their claims of "inevitable" confusion.  In reality, "jurors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios." *Synopsys, Inc. v. Magma Design Automation*, No. 05-701, 2006 WL 1452803, at *4 (D. Del. May 25, 2006). There is no reason to "pre-judge . . . yet-unnamed jurors by

assuming they are unable to digest the facts and law in this case." *Id*.  Indeed, given the overlap of issues, jurors are likely to be more confused if, for example, they are asked to evaluate the *Georgia-Pacific* factors in a damages trial without having heard the evidence of how the accused products utilize the patented inventions during a liability trial.

Similarly, Defendants fail to demonstrate any prejudice from continuing the damages discovery that has already begun.  No Defendant has presented any specific reason why damages-related discovery would be unusually burdensome.  As explained above, the parties have already agreed to extend the discovery period to accommodate a delayed *Markman* hearing.

Defendants have already propounded damages-related discovery, including document requests and contention interrogatories.   For example, Defendants' Eighth Common Interrogatory seeks:

> …the amount of damages to which Clouding claims to be entitled from each Defendant in this action, whether as lost profits, a reasonable royalty, or otherwise, and explain in detail the method used to calculate those damages, including for each Patent-in-suit all facts, contentions, circumstances, Documents, and Things that Clouding alleges support any royalty rate(s) that it contends to constitute a "reasonable royalty" under 35 U.S.C. § 284 for the alleged infringement of the Patents-in-suit, when Clouding contends that the damages period begins to run for each of the Patent-in-suit, and the basis of such contention.

Defendants cannot now complain that they would be burdened by providing discovery to Clouding, particularly discovery that Clouding must have to more fully respond to Defendants' contention interrogatory.  The same discovery will bear on liability issues like commercial success.

### F.  Defendants Do Not Explain Why Bifurcation Must Be Considered At This Time

These cases were initially filed in early to mid 2012.  From the outset, Defendants have known how many patents Clouding was asserting.  Defendants proposed a Scheduling Order for these cases with full knowledge of those facts.  To address the

purported complexity, Defendants asked the Court to require Clouding to limit the number of asserted claims, and the Court did so. Defendants did not seek bifurcation at that time. Now, the parties have agreed, at the Court's request, to delay *Markman* proceedings to allow for greater coordination with more recently-filed cases. This provides even more time for both parties to conduct discovery.

Defendants do not explain what events have suddenly triggered the purported need for bifurcation. The basic facts that Defendants identify – the number of patents and infringing products – have been known for some time. They offer no clear reason why bifurcation must be addressed now. As noted above, the case will be further narrowed, both through the further reduction in claims already ordered by the Court, and through the likely further narrowing of products at issue, and other issues to be presented as the case moves toward trial.

Given that the ultimate scope of issues and claims to be presented remains somewhat uncertain, it is premature to suggest that these cases could not possibly be tried without bifurcation. As set forth below, there are significant reasons why bifurcation is problematic. At this point, it is also unnecessary. There will be substantial changes in these cases before they are ready for trial. The Court will be in a far better position to evaluate the need for bifurcation of trial closer to the actual time of trial. At present, Defendants' arguments about the complex nature of the proceedings are essentially hypothetical.

Defendants presumably will argue that bifurcation of discovery is needed right away and that the Court must rule on this issue now. As discussed in greater detail above, bifurcation of discovery is likely to lead to more, not less difficulty for both the parties and the Court, as bifurcation of discovery inevitably leads to additional disputes over whether particular discovery is relevant only to the later stage, or also to the earlier stage. Further, because the parties have already agreed to delay the *Markman* hearing for several months to accommodate coordination with later-filed cases, additional time is

17

available to the parties in which to complete discovery on both issues, without the purported prejudice claimed by Defendants.

### G.  Defendants Additional Arguments Fail To Support The Requested Bifurcation

Defendants rely heavily on this Court's prior decision in *British Telecom PLC v. Google Inc*. order.  (No. 11-1249-LPS, 2013 WL 3814329 (D. Del. July 22, 2013)).  The facts of that case are significantly different than those presented here.  There, the plaintiff accused 50 products of infringement.  Here, by Defendants' count, each case accuses at most 17 products[2] and there is substantial overlap between damages and liability issues for each case.  Similarly, Defendants' assumption that there would be many different damages scenarios depending on liability outcomes is not supported by any argument on the merits of any claim.  It is speculative.  *See Senorx*, No. 12-cv-173 at 7:

> "With regard to other efficiencies cited by [defendant] (such as the fact that a finding in its favor as to liability would eliminate the need for a second trial on damages/willfulness, or that an alternative finding of liability could facilitate settlement), the Court notes that these outcomes, while possible, are entirely speculative at this stage."

Defendants' contention is also belied by the requirement that Clouding vastly reduce its asserted claims to at most 20 per Defendant prior to trial.  The inefficiencies bifurcation would create heavily outweigh any possible inefficiency that may result.

Defendants cited cases regarding the Seventh Amendment also fail to support its arguments.  In particular, those cases do not involve a situation in which the plaintiff intends to rely upon the commercial success of *accused products* to refute invalidity arguments.  For example, the *Paine, Webber, Jackson & Curtis, Inc., v. Merrill Lynch, Inc.*, 587 F. Supp. 1112 (D. Del. 1984) decision primarily relies on the fact that the

---

[2] Neither Google nor Amazon have produced any source code, which would enable Clouding to further study and possibly drop accused products.

patentee in that case practiced the invention, and therefore sales and revenue from its own products would demonstrate any commercial success. *Id*. at 1117: ("It is true in some cases courts have considered the infringer's sales as evidence of commercial success, but this is generally because, unlike here, the patentee did not itself practice the patented invention."). Here, Clouding has made clear that it intends to rely upon Defendants' sales. Defendants also rely on an order in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 04-cv-1371, 2006 WL 2435089, *2 (D. Del. August 22, 2006) which involved removing issues of invalidity from the infringement and damages trial, so it is different than this case.

## IV.     CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion and not bifurcate the trials in these cases and not bifurcate the discovery period. If need be, the Court may revisit the need and legal propriety of bifurcation when the cases are closer to trial and the issues are more fully developed.

October 21, 2013                              BAYARD, P.A.

OF COUNSEL:                                    /s/ Stephen B. Brauerman
                                              Richard D. Kirk (rk0922)
Marc A. Fenster                               Stephen B. Brauerman (sb4952)
Brian Ledahl                                  Vanessa R. Tiradentes (vt5398)
Dorian S. Berger                              222 Delaware Avenue, Suite 900
RUSS AUGUST & KABAT                           P.O. Box 25130
12424 Wilshire Boulevard, 12th Floor          Wilmington, DE 19899
Los Angeles, CA 90025                         (302) 655-5000
(310) 826-7474                                rkirk@bayardlaw.com
mfenster@raklaw.com                           sbrauerman@bayardlaw.com
bledahl@raklaw.com                            vtiradentes@bayardlaw.com
dberger@raklaw.com                            *Attorneys for Plaintiff Clouding IP, LLC*