## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLOUDING IP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-639-LPS |
| | : | |
| GOOGLE INC., | : | |
| | : | |
| Defendant. | : | |

---

| | | |
|---|---|---|
| CLOUDING IP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-641-LPS |
| | : | |
| AMAZON.COM, INC. and AMAZON | : | |
| WEB SERVICES, LLC, | : | |
| | : | |
| Defendants. | : | |

---

| | | |
|---|---|---|
| CLOUDING IP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-675-LPS |
| | : | |
| RACKSPACE HOSTING, INC., | : | |
| RACKSPACE US, INC. and JUNGLE | : | |
| DISK, LLC, | : | |
| | : | |
| Defendants. | : | |

CLOUDING IP, LLC,                     :

           Plaintiff,        :

             v.                 :       C.A. No. 13-1338-LPS

CA, INC. d/b/a CA TECHNOLOGIES,   :

           Defendant.    :

---

CLOUDING IP, LLC,                     :

           Plaintiff,        :

             v.                 :       C.A. No. 13-1341-LPS

HEWLETT-PACKARD COMPANY,   :

           Defendant.    :

---

CLOUDING IP, LLC,                     :

           Plaintiff,        :

             v.                 :       C.A. No. 13-1342-LPS

AT&T MOBILITY LLC and AT&T
CORP.,                             :

           Defendants.

CLOUDING IP, LLC,           :

           :

      Plaintiff,       :

           :

    v.            :     C.A. No. 13-1453-LPS

           :

CITRIX SYSTEMS INC.,    :

           :

      Defendant.    :

---

CLOUDING IP, LLC,           :

           :

      Plaintiff,       :

           :

    v.            :     C.A. No. 13-1454-LPS

           :

DROPBOX INC.,        :

           :

      Defendant.    :

---

CLOUDING IP, LLC,           :

           :

      Plaintiff,       :

           :

    v.            :     C.A. No. 13-1455-LPS

           :

EMC CORPORATION, EMC    :

INTERNATIONAL US HOLDINGS,  :

INC., and VMWARE, INC.,    :

           :

      Defendants.   :

CLOUDING IP, LLC,                          :
                                           :
      Plaintiff,                    :
                                           :
   v.                                    :    C.A. No. 13-1456-LPS
                                           :
SAP AG and SAP AMERICA, INC.,              :
                                           :
      Defendants.                   :

---

CLOUDING IP, LLC,                          :
                                           :
      Plaintiff,                    :
                                           :
   v.                                    :    C.A. No. 13-1458-LPS
                                           :
VERIZON ONLINE LLC,                        :
TERREMARK NORTH AMERICA                    :
LLC and VERIZON BUSINESS                   :
NETWORK SERVICES INC.,                     :
                                           :
      Defendants.                   :

---

## MEMORANDUM OPINION

PUBLIC VERSION
RELEASED JULY 31, 2014

July 28, 2014
Wilmington, Delaware

STARK, U.S. District Judge:

Presently before the Court are Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(1). Defendants argue that this Court lacks subject matter jurisdiction over the present actions because Plaintiff lacks standing to sue on its own. Defendants assert two primary grounds for dismissal: first, that Plaintiff was not transferred all substantial rights in the patents-in-suit and, second, that the assignment of those rights to Plaintiff is void as champertous.

The Court concludes that Plaintiff does not have standing because it lacks all substantial rights in the patents-in-suit. Thus, the Court will grant Defendants' motion to dismiss. The Court will deny as moot Defendants' motion to dismiss on the basis that the purported assignment is void as champertous.[1]

I.   FACTUAL BACKGROUND

Clouding IP, LLC ("Plaintiff" or "Clouding") entered into a Patent Purchase Agreement ("PPA") and a related Patent Assignment Agreement ("Assignment") with Symantec Corporation ("Symantec") with respect to the patents-in-suit. (Declaration of Dorian Berger ("Berger Decl.") Ex. A, B) (hereinafter, "Agreement")[2] The Agreement covered the purported sale to Clouding of all title, rights, and interest in the patents, subject to provisions by which Symantec retained

---

[1]To the extent there are any additional motions pending in any of these related cases, they are also denied as moot (with the exception of any defense motions to join in a co-defendant's motion to dismiss, which will be granted).

[2]As the Assignment was made in consideration of the parties' agreement to assign the patents-in-suit pursuant to the PPA (*see* Berger Decl. Ex. A § 4.1), the Court treats the contracts as a single transaction between the parties.

1

particular rights in the patents. (PPA § 4.1)[3] In exchange, Symantec received a stream of guaranteed payments and a percentage of future licensing and enforcement revenue from the patents. (*Id.* § 3.2)

## II.    PROCEDURAL BACKGROUND

On May 22, 2012, Clouding filed multiple, related patent infringement actions against several defendants, including Google Inc. ("Google") (C.A. No. 12-639-LPS D.I. 1) and Amazon.com, Inc. and Amazon Web Services LLC (collectively, "Amazon") (C.A. No. 12-641-LPS D.I. 1). On May 29, 2012, Clouding sued Rackspace Hosting, Inc., Rackspace US, Inc., and Jungle Disk, LLC (collectively, "Rackspace"). (C.A. No. 12-675-LPS) Thereafter, Clouding filed additional actions against CA Technologies Inc. ("CA Technologies") (C.A. No. 13-1338-LPS D.I. 1), Hewlett-Packard Company ("HP") (C.A. No. 13-1341-LPS D.I. 1), and AT&T Inc.[4] ("AT&T") (C.A. No. 13-1342-LPS D.I. 1) on July 26, 2013; and then against Citrix Systems Inc. ("Citrix") (C.A. No. 13-1453-LPS D.I. 1), Dropbox Inc. ("Dropbox") (C.A. No. 13-1454-LPS D.I. 1), EMC Corporation, EMC International US Holdings, Inc., and VMware, Inc. (collectively, "EMC") (C.A. No. 13-1455-LPS D.I. 1), SAP AG and SAP America, Inc. (collectively, "SAP") (C.A. No. 13-1456-LPS D.I. 1), and Verizon Online LLC, Terremark North America LLC, and Verizon Business Network Services Inc. (collectively, "Verizon") (C.A. No. 13-1458-LPS D.I. 1) on August 17, 2013 (collectively, "Defendants").

---

[3]For the purposes of the pending motions, it is undisputed that Symantec was the patentee or assignee of the patents-in-suit at the time the Agreement was executed. At that same time, Clouding was named STEC IP. (*See* Berger Decl. Ex. A)

[4]AT&T Inc. was dismissed and AT&T Mobility LLC and AT&T Corp. ("AT&T") were substituted. (C.A. No. 13-1342-LPS)

The complaints allege infringement of various patents in different combinations for each Defendant, with a total of 14 patents asserted by Clouding across all related actions.[5] The patents-in-suit concern a range of apparatuses and systems related to computer hardware engineering and architecture, distributed and "virtual" computing, network resource allocation and management, communication protocols and security, and data indexing and storage.

On September 26, 2013, Amazon filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction based on Plaintiff's Lack of Standing. (C.A. No. 12-641-LPS D.I. 112) The parties completed briefing on October 25, 2013. (C.A. No. 12-641-LPS D.I. 113, 129, 130, 138) On September 30, 2013, Google filed its Motion to Dismiss for Lack of Standing, Including on the Basis that the Purported Assignment of Patent Rights to Clouding IP, LLC is Void as Champertous. (C.A. No. 12-639-LPS D.I. 101) The parties completed briefing on October 28, 2013. (C.A. No. 12-639-LPS D.I. 102, 119, 120, 128) On December 20, 2013, EMC and Rackspace filed their Motions to Dismiss for Lack of Standing. (C.A. No. 13-1455-LPS D.I. 32; C.A. No. 12-675-LPS D.I. 166) Briefing on these motions was completed on January 15, 2014. (C.A. No. 13-1455-LPS D.I. 33, 39, 40, 42; C.A. No. 12-675-LPS D.I. 167, 168, 171, 172, 175) All Defendants in all related actions have filed or joined in a motion to dismiss for lack of standing.

The Court heard argument on all the motions on January 31, 2014. (C.A. No. 12-639-

---

[5]The patents-in-suit are U.S. Patent Nos. 7,596,784 ("the '784 patent"), 7,065,637 ("the '637 patent"), 6,738,799 ("the '799 patent"), 5,944,839 ("the '839 patent"), 5,825,891 ("the '891 patent"), 5,495,607 ("the '607 patent"), 6,925,481 ("the '481 patent"), 7,254,621 ("the '621 patent"), 6,631,449 ("the '449 patent"), 6,918,014 ("the '014 patent"), 6,963,908 ("the '908 patent"), 7,272,708 ("the '708 patent"), 7,836,292 ("the '292 patent"), and 7,032,089 ("the '089 patent").

LPS D.I. 156) (hereinafter "Tr.").

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of

jurisdiction over the subject matter. As the question of subject matter jurisdiction under Rule

12(b)(1) is not unique to patent law, it is governed by the law of the regional Circuit – here the

Third Circuit. *See Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002) ("We

review a dismissal for lack of subject matter jurisdiction according to regional circuit law, since

it is a procedural question not unique to patent law.").

Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to

the Court's subject matter jurisdiction. *See Gould Elec., Inc. v. United States*, 220 F.3d 169, 176

(3d Cir. 2000). In reviewing a factual challenge to the Court's subject matter jurisdiction, the

Court is not confined to the allegations of the complaint, and the presumption of truthfulness

does not attach to those allegations. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d

884, 891 (3d Cir. 1977). Instead, the Court may consider evidence outside the pleadings,

including affidavits, depositions, and testimony, to resolve any factual issues bearing on

jurisdiction. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Once the Court's

subject matter jurisdiction is challenged, the plaintiff bears the burden of proving jurisdiction

exists. *See Mortensen*, 549 F.2d at 891.

### B.   Standing

"Standing must be present at the time the suit is brought." *Sicom Sys., Ltd. v. Agilent

Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005). If a plaintiff lacks standing at that time, the

4

Court lacks subject matter jurisdiction and the case must be dismissed pursuant to Rule 12(b)(1). *See generally Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). The party "bringing the action bears the burden of establishing that it has standing." *Sicom*, 427 F.3d at 976.

Standing "is comprised of both constitutional and prudential components." *Oxford Assocs. v. Sys. Auth.*, 271 F.3d 140, 145 (3d Cir. 2001). The requirement of constitutional standing derives from the Article III "case" or "controversy" requirement, compelling "a plaintiff to demonstrate that he or she suffered [i] 'injury in fact,' that [ii] the injury is 'fairly traceable' to the actions of the defendant, and that [iii] the injury will likely be redressed by a favorable decision." *Id.* "[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010).[6] Prudential standing requires, among other things, that a litigant assert his or her own legal rights and not rely on the rights or interests of third parties. *See Hill ex rel. Hill v. Pennsylvania Dept. of Corr.*, 521 Fed. Appx. 39, 40 (3d Cir. Apr. 3, 2013) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

A patent is "a bundle of rights which may be divided and assigned, or retained in whole or part." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991); *see also* 35 U.S.C. § 261 ("[P]atents, or any interest therein, shall be assignable in law by an instrument in writing."). While all such rights are initially held by the named inventor(s), they may be licensed or assigned to multiple parties, and when "a sufficiently large

---

[6]The core exclusionary right of a patent is the negative right of a "patentee" to "exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States." 35 U.S.C. § 154.

portion of this bundle of rights is held by one individual, we refer to that individual as the owner

of the patent, and that individual is permitted to sue for infringement in his own name." *Alfred*

*E. Mann Found. For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir.

2010).

Accordingly, plaintiffs who "hold all legal rights to the patent as the patentee or assignee

of *all patent rights* – the entire bundle of sticks," can sue in their own name alone. *Morrow v.*

*Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) (emphasis added); *see also id.*

("Unquestionably, a patentee who holds all the exclusionary rights and suffers constitutional

injury in fact from infringement is one entitled to sue for infringement in its own name.").[7]

Additionally, if a patentee transfers "*all substantial rights*" in the patent to an assignee,

"this amounts to an assignment or a transfer of title, which confers constitutional standing on the

assignee to sue for infringement in its own name alone." *Id.* at 1340 (emphasis added); *see also*

*Sicom*, 427 F.3d at 976; *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000)

("[W]here the patentee makes an assignment of all substantial rights under the patent, the

assignee may be deemed the effective 'patentee' under 35 U.S.C. § 281 and thus may have

standing to maintain an infringement suit in its own name.").

Finally, exclusive licensees – those parties who hold "*exclusionary rights and interests*

*created by the patent statutes, but not all substantial rights* to the patent" – have constitutional

standing. *Morrow*, 499 F.3d at 1339 (emphasis added). "However, these exclusionary rights

---

[7]It is clearly established that a "patentee" is entitled to bring a "civil action for infringement of his patent," 35 U.S.C. § 281, and the "patentee" includes the patentee to whom the patent was issued and the "successors in title to the patentee," 35 U.S.C. § 100(d), where the "successor in title" is "the party holding legal title to the patent." *Morrow*, 499 F.3d at 1339.

'must be enforced through or in the name of the owner of the patent,' and the patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns." *Id.* at 1340; *see also Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007). Put another way, "unlike an assignee that may sue in its own name, an exclusive licensee having fewer than all substantial patent rights . . . that seeks to enforce its rights in a patent generally must sue jointly with the patent owner." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1347-48 (Fed. Cir. 2001) (finding "it was proper for IPD, as an exclusive licensee of fewer than all substantial rights in the '202 patent, to add [licensor] as a party plaintiff").[8] "The patentee is joined for the purpose of avoiding the potential for multiple litigations and multiple liabilities and recoveries against the same alleged infringer." *Morrow*, 499 F.3d at 1340; *see also Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1278 (Fed. Cir. 2007).

"By contrast, a bare licensee, i.e., a party with *only a covenant from the patentee that it will not be sued* for infringing the patent rights, lacks standing to sue third parties for infringement of the patent." *Propat*, 473 F.3d at 1193-94 (emphasis added). "[A]n infringement action brought by a bare licensee must be dismissed. A bare licensee cannot cure its lack of standing by joining the patentee as a party." *Id.*

---

[8] Relatedly, where the plaintiff is a patentee who has given away some but not all substantial rights, it must join its exclusive licensee. *See Alfred E. Mann*, 604 F.3d at 1360 ("When there is an exclusive license agreement, as opposed to a nonexclusive license agreement, but the exclusive license does not transfer enough rights to make the licensee the patent owner, either the licensee or the licensor may sue, but both of them generally must be joined as parties to the litigation.").

## IV.    DISCUSSION

The Court finds Clouding has constitutional standing.[9] The issue is whether Clouding has prudential standing. For the reasons explained below, it does not.

### A.    Formal Legal Title

Clouding contends that it has standing to sue for infringement on the basis that it holds "legal title" to the patents-in-suit pursuant to the Agreement with Symantec. (C.A. No. 12-641-LPS D.I. 129 at 6) Clouding presupposes that it has "legal title" based on the label given to the Agreement and certain provisions therein. Clouding misapprehends the controlling inquiry.

"The title of the agreement at issue" – whether it is termed a "license" rather than an "assignment" – "is not determinative of the nature of the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination." *Intellectual Prop. Dev.*, 248 F.3d at 1344; *see also Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.") (emphasis omitted). Therefore, because "[e]ach license and assignment is unique," *Sicom*, 427 F.3d at 976, to determine "whether a provision in an agreement constitutes an assignment or a license, one must [i] ascertain the intention of the parties and [ii] examine the substance of what was granted." *Vaupel*, 944 F.2d at 874.

---

[9]The parties devoted the majority of their focus to the question of prudential standing. Rackspace's motion (C.A. No. 12-675-LPS D.I. 166) challenges Clouding's constitutional standing by contending that Clouding is merely a bare licensee, in light of the Open Innovation Network (OIN) license. If the Rackspace motion were correct that Clouding *also* lacks constitutional standing, the outcome would remain the same: the Court would have to dismiss these cases for lack of standing.

### 1.    **Intention of the Parties**

"Construction of patent assignment agreements is a matter of state contract law." *Mars,*

*Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1370 (Fed. Cir. 2008), *mandate recalled and*

*amended by* 577 F.3d 1377 (Fed. Cir. 2009).  Further, "[s]tate law . . . governs the question of

who has legal title." *MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1375 (Fed. Cir. 2007).  In

Delaware,[10] "[u]nder standard rules of contract interpretation, a court must determine the intent

of the parties from the language of the contract . . . .  Where no ambiguity exists, the contract will

be interpreted according to the ordinary and usual meaning of its terms." *Mars*, 527 F.3d at

1370.  The "true test is not what the parties to the contract intended it to mean, but what a

reasonable person in the position of the parties would have thought it meant." *Lorillard Tobacco*

*Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006) (citation omitted).

Giving the ordinary and usual meaning to the terms of the Agreement, the Court

concludes that the intent of the parties was to transfer title to the patents-in-suit, but only "subject

to" the conditions of the Agreement.  (PPA § 4.1)  Clouding relies on PPA § 1.2, part of the

Agreement's "Background," as evidence of Symantec's intent to convey formal legal title to

Clouding.  But that provision states, "Seller wishes to sell to Purchaser all rights, title, and

interest in the patents and applications . . . while retaining the License (as defined below) as set

forth in more detail below." (PPA § 1.2; *see also Mars*, 527 F.3d at 1370 ("A transfer of the

'entire interest' of a patentee in a patent is well known to mean a full assignment of the patent –

---

[10]The parties appear not to dispute that Delaware law governs the agreement.  (*See* C.A.
No. 12-641-LPS D.I. 129 at 6; *see also* PPA § 8.7 ("This Agreement, its performance and
interpretation shall be governed by the substantive law of the State of Delaware, USA, exclusive
of its choice of law rules."))

i.e., transfer of title.")) At best, a reasonable person in the position of the parties would have understood that Symantec intended to convey all "rights, title, and interest," ***conditioned on the terms of the license it retained***, which, as discussed in the following section, carved out substantial rights to be retained by Symantec.[11]

### 2. Substance of What Was Granted[12]

"A conveyance of legal title by the patentee can be made only of [i] the entire patent, [ii] an undivided part or share of the entire patent, or [iii] all rights under the patent in a specified geographical region of the United States." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc) (citing *Waterman*, 138 U.S. at 255). "A transfer of any of these is an assignment and vests the assignee with title in the patent," while a "transfer of less than one of these three interests is a license, not an assignment of legal title, and it gives the licensee no right to sue for infringement at law in the licensee's own name." *Id.* at 1551-52 (citing *Waterman*, 138 U.S. at 255)); *see also Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996).

While Clouding once again points to the recital in PPA § 1.2, Clouding neglects the core inquiry. The Court must look to the provision of the contract that is legally operative in

---

[11]*See also Vaupel*, 944 F.2d at 875 ("In determining whether a grant of all substantial rights was intended, it is helpful to look at what rights have been retained by the grantor, not only what was granted.") (emphasis omitted); *Alfred E. Mann*, 604 F.3d at 1359.

[12]Clouding argues that its recording of the purported assignment with the United States Patent and Trademark Office ("PTO") strengthens its position. While recording creates a presumption in Clouding's favor if the ***validity*** of the Agreement is challenged, it has no bearing on the question of what substantive rights were actually transferred. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010) ("The recording of an assignment with the PTO . . . creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment."); *see also* 37 C.F.R. § 3.54.

effectuating the transfer and determine what was actually granted. *See, e.g., Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) (holding party had standing based on language governing transfer of all "right, title and interest"). When Clouding cites to the actual transfer provision in § 4.1 of the Agreement, it supports its contention that "all rights, title, and interest" were conveyed only by quoting a snippet without the entire context. (*See* C.A. No. 12-641-LPS D.I. 129 at 6) In full, PPA § 4.1. actually states:

> Seller agrees to sell, assign, transfer and convey to Purchaser, ***subject to the terms of this Agreement*** including the License set forth in Section 4.5 of this Agreement, all of Seller's right, title, and interest in and to the Assigned Patent Rights, and at Closing will provide Purchaser with the Executed Assignment for the Assigned Patent Rights.

(Emphasis added)

The transfer of "all rights, title, and interest" in the patents identified in the Agreement was made "subject to the terms of this Agreement including the License set forth in Section 4.5."[13] Under the Agreement, as will be discussed further below, Clouding encumbered its right to sell or assign the patents, grant an exclusive license, indulge infringement, allow the patent to lapse, and dictate the terms of licenses. Thus, based on the clear language of the transfer provisions, Symantec did not convey any entire patent, an undivided part or share of any entire patent, or all rights under any patent in a specified geographical region of the United States. Consequently, Clouding does not hold formal legal title. *See Rite-Hite*, 56 F.3d at 1551-52.

---

[13]Because the transfer of rights was made "subject to" the conditions of the Agreement, Clouding's attempt to characterize the limitations Symantec placed on each of these rights as merely "post-closing covenants" is unavailing.

### B.    "All Substantial Rights" Exception

Clouding contends that even if it was not transferred formal legal title, it possesses all

substantial rights sufficient to create standing. "Even if the patentee does not transfer formal

legal title, the patentee may effect a transfer of ownership for standing purposes if it conveys all

substantial rights in the patent to the transferee." *Propat*, 473 F.3d at 1189. In such a

circumstance, the "transferee is treated as the patentee and has standing to sue in its own name."

*Id.* Accordingly, the Court must "look to the agreement between the parties and analyze the

respective rights allocated to each party under that agreement." *Id.*; *see also Intellectual Prop.*

*Dev.*, 248 F.3d at 1344 ("[W]e must assess the agreement at issue in this case, weighing the

rights in the . . . patent transferred to [the exclusive licensee] against those retained by [licensor],

to determine whether [licensor] assigned all substantial rights.").

While the Federal Circuit has "never purported to establish a complete list of the rights

whose holders must be examined to determine whether a licensor has transferred away sufficient

rights to render an exclusive licensee the owner of a patent," it has listed "at least some of the

rights that should be examined," including:

    (i)    "*transfer of the exclusive right to make, use, and
           sell* products or services under the patent;"

    (ii)   "the scope of the *licensee's right to sublicense*;"

    (iii)  "the *nature of license provisions regarding the
           reversion of rights to the licensor* following
           breaches of the license agreement;"

    (iv)  "the *right of the licensor to receive a portion of the
           recovery* in infringement suits brought by the
           licensee;"

12

(v)     "the *duration of the license rights* granted to the
        licensee;"

(vi)    "the *ability of the licensor to supervise and control*
        the licensee's activities;"

(vii)   "the obligation of the *licensor to continue paying
        patent maintenance fees*;" and

(viii)  "the nature of any *limits on the licensee's right to
        assign* its interests in the patent."

*Alfred E. Mann*, 604 F.3d at 1360-61 (emphasis added).

Also helpful to the Court's analysis is the fact that the Agreement here closely resembles

the conveyance in *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995). In *Abbott*, the

Federal Circuit concluded that the licensor, Diamedix, had not transferred "all substantial rights"

when it retained "[i] a limited right to make, use, and sell products embodying the patented

inventions, [ii] a right to bring suit on the patents if Abbott declined to do so, and [iii] the right to

prevent Abbott from assigning its rights under the license to any party other than a successor in

business." *Id.* at 1132. As the Court explained in *Abbott*, "Those retained rights are the sort that

are commonly held sufficient to make a patent owner who grants an exclusive license a necessary

party to an infringement action brought by the licensee." *Id.*

Applying the same type of analysis to the Agreement between Clouding and Symantec

yields a conclusion that Symantec retained substantial rights in the patents-in-suit, such that the

Agreement did not transfer all substantial rights to Clouding.

### 1.     Right to Exclude

"[T]ransfer of the exclusive right to make, use, and sell products or services under the

patent is vitally important to an assignment." *Alfred E. Mann*, 604 F.3d at 1360; *see also Prima*

13

*Tek II*, 222 F.3d at 1379 ("In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, we pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention in the exclusive territory.") (emphasis in original). Here, there can be no question that Symantec did *not* convey this right in full.

In *Abbott*, where the Federal Circuit held that Abbott was a licensee, not an assignee, and the licensor of the patents had to be joined, the Court focused on the fact that the licensor retained (i) "the right to make and use, for its own benefit, products embodying the inventions claimed in the patents;" (ii) "the right to sell such products to end users, to parties with whom Diamedix had pre-existing contracts, and to pre-existing licensees;" and (iii) "prior licenses" granted by the licensor. 47 F.3d at 1132. Under the Agreement at issue here, Symantec similarly retained (i) the right for itself to make, use, sell, offer to sell, and import the claimed inventions in all the patents, pursuant to PPA § 4.5(a); (ii) the right to sublicense its customers, pursuant to PPA § 4.5(b); and (iii) the right to prevent Clouding from interfering with the rights of parties Symantec had already licensed to, under PPA § 4.5(b) (Schedule 6.4). Symantec's "prior licenses" include those to ███████████, who themselves have the right to grant sublicenses on some of the patents at issue to current or new subsidiaries, who themselves likewise may also issue their own sublicenses under specific circumstances. (*See* Berger Decl. Ex. B; C.A. No. 12-641-LPS D.I. 113-2 (Ex. B) §§ 3.1-3.4; D.I. 113-3 (Ex. C) §§ 1.3-4, 2.1) Indeed, the Agreement here retains even greater rights for Symantec than were retained by the licensor in *Abbott*, as Symantec may continue to sublicense to its customers and some of Symantec's pre-existing sub-licensees can continue to grant sublicenses pursuant to their now

14

grandfathered-in agreements.[14]

### 2. Right to Bring Suit

Like the agreement in *Abbott*, Clouding's Agreement retains for Symantec the right to

bring suit. When "the licensor retains a right to sue accused infringers, that right often precludes

a finding that all substantial rights were transferred to the licensee." *Alfred E. Mann*, 604 F.3d at

1361. Indeed, "the nature and scope of the licensor's retained right to sue accused infringers is

***the most important factor*** in determining whether an exclusive license transfers sufficient rights

to render the licensee the owner of the patent." *Id.* (emphasis added).

In *Abbott*, 47 F.3d at 1132, the agreement provided that "if Diamedix asks Abbott to

bring suit against an alleged infringer and Abbott declines to do so, Diamedix has the right to

prosecute its own infringement action." The Federal Circuit found that "although Abbott has the

option to initiate suit for infringement, it does not enjoy the right to indulge infringements, which

normally accompanies a complete conveyance of the right to sue." *Id.* Similarly, here, pursuant

to PPA § 5.5, Symantec retains the right to sue (as a counter-plaintiff, i.e., when Symantec itself

is sued). Symantec can instruct Clouding to sue certain third parties identified by Symantec –

namely, third parties that have asserted claims against Symantec. (*See* PPA § 5.5) If Clouding

refuses, Symantec has the right to "███████" the patent for "███████" in order to

pursue the counterclaim or counter-suit. *Id.*[15] Thus, just as the licensor in *Abbott* could override

---

[14]Clouding's argument that Symantec first conveyed all exclusive rights to Clouding in full and only thereafter received a license is unconvincing, as the plain language of PPA § 4.5(a) makes clear that "Seller and its Affiliates shall ***retain*** . . . [a] license to make, have made, use, sell, offer for sale, [and] import" the claimed inventions (emphasis added).

[15]While § 5.5 provides that Symantec must retransfer the patent to Clouding after the third party's claim is resolved, and share the proceeds with Clouding, Symantec would control the

the licensee's desire to indulge infringement, so, too, can Symantec circumvent Clouding's

decision to allow infringement and, instead, bring suit directly as a counter-plaintiff. As

Defendants correctly note, "at most, Clouding has only a right of first refusal to sue, and that

power is far less than a true owner's power to indulge infringement." (C.A. No. 12-641-LPS D.I.

113 at 11) (citing *Abbott*, 47 F.3d at 1132)

Moreover, PPA § 5.5 implicates the very concerns animating the prudential standing

requirement: preventing multiple litigations against the same accused infringers. *See Morrow*,

499 F.3d at 1340. If any of the Defendants in the present actions were to initiate suit against

Symantec, Symantec could command Clouding to assert the patents against such a Defendant,

and – if Clouding refused – Symantec could execute its right to repurchase (for no consideration)

and itself assert the patents against such a Defendant. Clouding contends Symantec's control in

such a scenario is illusory because Clouding could grant the accused infringer a sublicense. *See*

*Speedplay*, 211 F.3d at 1251 (finding licensor's right to sue infringer – if licensee does not –

"illusory" because licensee could then "render that right nugatory by granting the alleged

infringer a royalty-free sublicense"). However, Clouding identifies no part of PPA § 4.1, or any

other provision of the Agreement, indicating that Clouding's right to grant a sublicense to such

an infringer overrides Symantec's reversionary repurchase right once it is triggered.

### 3.      **Right to Assign**

"Just as the right to alienate personal property is an essential indicia of ownership, the

right to further assign patent rights is implicit in any true assignment." *Sicom*, 427 F.3d at 979;

*see also id.* ("As the district court found, 'the restriction on Sicom's right to assign' was a 'fatal

---

litigation.

16

reservation of rights by Canada.'"); *Propat*, 473 F.3d at 1191 ("The right to dispose of an asset is

an important incident of ownership, and . . . a restriction on that right is a strong indicator that the

agreement does not grant . . . all substantial rights under the patent."); *Intellectual Prop. Dev.*,

248 F.3d at 1345 ("[L]imits on the assignment of rights are a factor weighing in favor of finding

a transfer of fewer than all substantial rights."). In *Abbott*, 47 F.3d at 1132, the licensor retained

the "right to prevent Abbott from assigning its rights under the license to any party other than a

successor in business."

    The Agreement before the Court presents a closer case. While Symantec lacks a blanket

veto,[16] the restraint on alienation Symantec imposed on Clouding is nonetheless considerable.

Under PPA § 3.5, until Symantec has received $ ███████ of cash and non-cash payments,

"████████████████████████████████████████

████████████████████████████████████████

████████████████" requires Symantec's consent, "███████████

███████████████," unless the sale is to a non-practicing entity ("NPE"), in which case

consent may be withheld at Symantec's "████████." (PPA § 3.5) (emphasis added)

Clouding has provided no evidence that Symantec has received the recited sum. Therefore,

under several scenarios, Clouding cannot make any assignment of the patents to another party

without the consent of Symantec.[17]

---

[16]*See Propat*, 473 F.3d at 1191 (finding right to veto particularly significant because licensor was free to veto any transfer decision, even arbitrarily).

[17]While the *intent* of this provision may be to ensure that Symantec receives the promised consideration in full, one of its *effects* is to impose a significant restraint on Clouding's ability to assign the patent.

17

### 4.    Right to License

The Symantec-Clouding Agreement also limits Clouding's right to license. "A licensee's right to sub-license is an important consideration in evaluating whether a license agreement transfers all substantial rights." *Prima Tek II*, 222 F.3d at 1380; *see also Sicom*, 427 F.3d at 979 (finding licensee lacked "all substantial rights" in part because licensor retained the right to "grant contracts and sub-contracts to develop the [] patent further; offer sublicenses under any improvements or corrections that [licensee] develops; veto any sublicense; and levy additional royalties or other consideration").[18]

Here, while Clouding can grant licenses, Symantec retains considerable control over Clouding's ability to license, necessitating that Clouding obtain Symantec's consent to license to a third party for "non-cash consideration" on terms materially different from the pre-approved Symantec form "Settlement and Licensing Agreement." (*See* PPA § 3.4) While not dispositive, these limits are a relevant consideration for the Court. *See Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1342 (Fed. Cir. 2011) ("When a licensing agreement restrains or controls the licensee's sublicensing power, the licensor is generally regarded as having retained substantial control over patent enforcement, and the agreement is not treated as having given the licensee all substantial rights in the patent.").

---

[18]The Court in *Sicom* observed that the agreement expressly stated that the licensor "retained legal title to the [] patent," but the Court based its finding on its evaluation of the particular substantive rights retained by the licensor in the provisions of the agreement. *Sicom*, 427 F.3d at 980 ("In light of Canada's right to permit infringement in certain cases, the requirement that Sicom consent to certain actions and be consulted in others, and the limits on Sicom's right to assign its interests in the patent, we hold that the Agreement transfers fewer than all substantial rights in the patent from Canada to Sicom.").

### 5.    Other Retained Rights

The right of the licensor to "receive a portion of the recovery in infringement suits" is also pertinent to the "all substantial rights" inquiry. *See Alfred E. Mann* , 604 F.3d at 1360-61. Under the Agreement, Symantec receives █████████████████████████████████████ ██████████████████████████████████, while Clouding receives the remainder. (*See* PPA § 3.2(b))  In addition, courts look at the licensor's obligation "to continue paying patent maintenance fees" and "the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement." *Alfred E. Mann* , 604 F.3d at 1360-61.  Pursuant to the Agreement, Clouding cannot refuse to pay maintenance fees when due and allow the patent to lapse without giving Symantec the opportunity to pay such fees; if Clouding does not cure within 30 days of written notice, then Symantec can exercise a reversionary right to reacquire the patents.  (PPA § 5.4(a)(B)(iv))  Similarly, if Clouding "█████████████████████████████████████████████████," unless Clouding has made a "██████████████████████" to not pursue a patent, Symantec may again exercise such a reversionary right.  (*Id.*)

19

## V.    CONCLUSION

Based on a careful review of the provisions of the Symantec-Clouding Agreement, the

Court finds that Clouding was not transferred formal legal title to Symantec's patents such that

Clouding now qualifies as the "patentee." Furthermore, while the Symantec-Clouding

Agreement was drafted to convey some substantial rights to Clouding, Symantec retained enough

of the bundle of rights (for each patent) that, when the Agreement is viewed as a whole, Clouding

does not possess "all substantial rights." As a result, Clouding's rights in the patents-in-suit do

not amount to an ownership interest such that it can now be considered the "effective patentee."

Clouding, thus, lacks prudential standing to bring suit on its own without joining Symantec.

Due to this lack of standing, the Court finds it lacks subject matter jurisdiction and will

grant Defendants' motions to dismiss for lack of standing. Appropriate orders will be entered in

each of these related cases.